Barbara MOORE, Plaintiff–Appellant,

v.

Louis SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 89–4722
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 8, 1990.

Ingrid Dave Williams, Walterine Langford, Vicksburg, Miss., for plaintiff-appellant.

Howard Lewis, Holly A. Grimes, Mary Ann Sloan, Mack A. Davis, Bruce R. Granger, Asst. Regional Counsel, Dept. of Health and Human Serv., Office of Gen. Counsel, Atlanta, Ga., Daniel Lynn, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for defendant-appellee.

Before REAVLEY, KING and JOHNSON, Circuit Judges.

REAVLEY, Circuit Judge:

In February of 1986 Barbara Moore submitted an application for Supplemental Security Income to the Department of Health and Human Services. After the application initially was denied, Moore sought and was granted a hearing before an administrative law judge (ALJ). The ALJ determined that Moore was not disabled and that she therefore was ineligible for benefits. This became the final decision of the Secretary of Health and Human Services ("Secretary") when the Appeals Council denied Moore's request for review. Moore appealed to the United States District Court for the Southern District of Mississippi. The case was referred to a magistrate who, upon reviewing the record, determined that the Secretary's decision was supported by substantial evidence and recommended affirmance of the denial of benefits. The district court adopted the magistrate's report and affirmed the Secretary's decision. This appeal followed. Having reviewed the record and determined that the ALJ did not apply the proper legal standard in evaluating Moore's eligibility for benefits, we reverse.

I.

Barbara Moore is thirty-six years old. She is a high school graduate and has received no other formal schooling. Moore's work experience is quite limited. Between May of 1972 and January of 1973 she worked on an assembly line as an encaser. That job required her to place electronic components into plastic tubes without touching the components. The record suggests that Moore left this job when she married her first husband. Between September of 1976 and January of 1977 Moore worked as a teacher's aide in a Head Start Center in Belzoni, Mississippi. She left this job when she remarried and moved with her second husband to Vicksburg, Mississippi. Moore worked for one week in 1980 as a waitress, and she worked for one week in 1983 in a factory as a gluer.

In July of 1982 Moore went to the Mississippi State Hospital for treatment of abdominal pains. The treating physician observed that Moore exhibited inappropriate behavior and indicated that Moore admitted to having auditory hallucinations and paranoid delusions. In August of 1982 Moore began voluntary outpatient treatment at the Warren Yazoo Mental Health Center, and she was initially diagnosed as suffering from schizophrenia. The record indicates that Moore continued to receive treatment at the Center on an outpatient basis up to the time of her hearing with the ALJ. The most recent case entry by Moore's consulting psychiatrist at the Center that is contained in the record is dated November 25, 1986. It describes Moore as suffering from chronic schizophrenia and indicates that "[s]he continues to have difficulty coping with life's demands." R. 335. The

consulting psychiatrist's case entries do not contain comments about Moore's ability to maintain employment. Moore's case manager from the Center, however, indicated in several of her reports that she felt Moore would be unable to work. R. 228, 236.

On October 5, 1982, Moore was voluntarily admitted to the State Hospital and underwent a series of psychological tests. Moore attained a full scale I.Q. of 84 on the Wechsler Adult Intelligence Scale–Revised (WAIS–R), this being the uppermost score in the borderline range of intellectual functioning. It was thought that her usual level of intellectual functioning is within the lower portion of the average range, *i.e.,* WAIS–R full scale of 90–95. The testing revealed that "Moore was moderately impaired in her ability to discern essential from non-essential environmental details. Also quite impaired was her ability to handle a task requiring visual-motor speed and incidental learning." R. 189. The testing also revealed "extremely strong passive-dependency needs" and "[m]arked obsessive thinking." R. 189. The psychologist interpreting the test results diagnosed Moore as suffering from a Cyclothymic disorder and a passive-dependent personality disorder. Moore was discharged from the State Hospital on December 3, 1982.

On January 4, 1984, Moore again was voluntarily admitted to the State Hospital and underwent another series of psychological tests. Moore attained a full scale score of 79 on the WAIS–R, placing her intellectual functioning in the upper limits of the borderline range. It was noted, however, that "Moore's verbal skills exceeded her performance skills which may give her the appearance of functioning at a higher level than she is capable at this time." R. 177. The testing revealed "mild difficulties with visual-perceptual motor abilities." R. 177. In summarizing the test results, the interpreting psychologist observed: "Academic performance on the PIAT was consistent with low average functioning. Personality assessment suggested that Mrs. Moore is highly defensive ... [and that] allows her

to look better than she really is. Mrs. Moore appears to have problems in communicating, assertiveness and emotional coping." R. 177. The diagnosis was a Dysthymic disorder and borderline personality. The psychologist recommended "[v]ocational rehabilitation to assist Mrs. Moore with employment similar to her teacher's aide position." R. 176. Moore was discharged on February 23, 1984.

In March of 1985 Moore submitted an application for Supplemental Security Income to the Department of Health and Human Services.[1] In connection with that application, the Secretary referred Moore to Dr. Katherine Nordal for a consultative examination. Dr. Nordal noted in her report that Moore "appeared to be almost exaggerating some of her symptoms" and "that the severity of some of the symptomatology as presented by her is somewhat questionable." R. 205. At another point in her report, Dr. Nordal again indicated her feeling that "there was a tendency on [Moore's] part to over exaggerate [sic] or malinger to some extent and some of her statements in regards to symptomatology maybe [sic] somewhat unreliable." R. 211. Dr. Nordal concluded that Moore met "the diagnostic criteria for a major depressive syndrome which appears to be functional in nature" and had at times in the past exhibited symptoms suggesting the presence of a psychotic disorder. R. 212. With respect to Moore's ability to work, Dr. Nordal concluded that the evaluation did not reveal "any factors which would preclude [Moore's] working in a situation which required only routine and repetitive tasks." R. 213. Dr. Nordal further determined that Moore "seem[s] to have ability to avoid physical danger, has the ability to follow simple directions and has the ability to perform routine repetitive work related tasks." R. 213. Nevertheless, Dr. Nordal felt that Moore's condition would not "improve significantly over the next 12 months" and that "[s]he obviously appears

---

**1.** That application eventually was denied. Moore did not appeal that decision, and it is not before us in this case.

to need to continue in therapy at the community health center." R. 213.

In connection with her February 1986 application for benefits, the Secretary referred Moore to Dr. Edward Latham for a comprehensive mental status evaluation. Dr. Latham concluded that Moore was suffering from a generalized anxiety disorder and schizophrenia, in remission. R. 217. He felt that Moore had "the ability to understand, retain and follow simple instructions and has adequate attentional capabilities." R. 217–18. However, Dr. Latham felt that Moore's ability to handle stress was mildly to moderately impaired and that her prognosis was "fair." R. 218.

The record indicates that at various times throughout her treatment Moore has had suicidal thoughts. Her husband stated that she tried to kill herself "a couple of times before she went to" the State Hospital. Documents from the Mental Health Center also suggest that Moore's condition is not consistent from week to week. Certain case entries reveal that Moore on occasion still exhibits inappropriate affect and behavior. There is evidence that around the time of the hearing on her application Moore did some cooking and light cleaning around the house. She attends her church on Wednesday evenings and twice on Sundays. Moore goes shopping during the weekends with her husband. Although she has a driver's license, Moore does not drive and is dependent on her husband, her case manager from the Mental Health Center, and her pastor's wife for transportation. Moore has two daughters. The children live with Mr. Moore's sister, because Moore does not feel capable of raising them properly.

## II.

An individual is disabled and entitled to benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Secretary has promulgated regulations establishing a five-step sequential evaluation process by which it is determined whether an individual's impairment prevents her from engaging in "any substantial gainful activity." See 20 C.F.R. § 404.1520(b)–(f). We summarized this five-step analysis in Singletary v. Bowen, 798 F.2d 818 (5th Cir.1986).

First, if the claimant is already employed, disability benefits are denied regardless of the severity of the impairment. Second, if the individual is not working, the Secretary must determine whether the claimed impairment is "severe." See [20 C.F.R.] § 404.1521. If the impairment is severe, the Secretary must determine whether the impairment is so severe that the claimant is presumed to be unable to pursue any gainful activity. This determination is made by comparing the impairment to a specific Listing of Impairments. See id. § 404, Subpart P, Appendix 1. If the claimant's impairment does not fall within the Listing of Impairments, the Secretary must determine whether the individual has a sufficient "residual functional capacity" to perform the kind of work he did in the past. See id. § 404.1545. Fifth, if the individual is unable to do past relevant work, then the Secretary must determine, based on the individual's age, education, work experience and residual functional capacity, whether the claimant can perform any other work which exists in the national economy. See id. § 404.1566.

Singletary, 798 F.2d at 820.

Based on the evidence in the record, the ALJ determined that Moore was suffering from chronic schizophrenia. The ALJ further determined that although Moore's impairment was severe it did not meet or equal the severity of any impairment in the relevant listing of impairments. Finally, the ALJ concluded that Moore had the residual functional capacity to perform her past relevant work as an encaser or a variation of that work. Accordingly, the ALJ held that Moore was not disabled and not entitled to benefits. In reaching this decision, the ALJ concluded:

[Moore's] impairments do not impose such significant limitation on the claimant as to prevent her from being able to

return to her employment as an encaser. The claimant's impairment has, admittedly, been much worse, but is now in remission. However, the record does not reveal a continuous period of 12 months in which the claimant was totally incapable of performing her past relevant work as an encaser or a variation of that work. R. 13. At another point, the ALJ held that "the record does not reveal that the claimant is unable to perform her household tasks or that she has been so impaired for 12 continuous months." R. 14. The ALJ concluded his analysis with the following:

> Thus, this Administrative Law Judge finds that at all times pertinent herein there has been no continuous period of 12 months in which the claimant was not capable of returning to her past relevant work and she is not eligible for supplemental security income (disability) at any time through the date of this decision. R. 14.

■ From these passages it is clear that the ALJ was under the impression that Moore had to demonstrate that her mental impairment prevented her from working for a minimum of twelve months before she was entitled to benefits. This position was rejected by this court over seven months prior to the ALJ's decision in this case. In *Singletary* we held that the only duration requirement contained in the relevant statute or regulations was that requiring that the impairment last or be expected to last twelve months. *See Singletary,* 798 F.2d at 821–22. There is no requirement that the impairment be disabling for a twelve month period. *See id.; see also Pagan v. Bowen,* 862 F.2d 340, 346–49 (D.C.Cir.1988). In this case it is clear that Moore has been impaired since at least 1982 and that the impairment has exhibited varying degrees of severity during that time. The ALJ thus erred in denying Moore's application because "there has been no continuous period of 12 months in which the claimant was not capable of returning to her work."

■ Because we conclude that the ALJ applied an improper legal standard and the agency must reconsider its decision, we need not address Moore's contention that she meets the conditions of listings 12.03(C) and 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix I. We note, however, that it appears that the ALJ may have concluded Moore did not qualify because there was no period of twelve months in which she exhibited "[m]arked restriction of activities of daily living" or "[m]arked difficulties in maintaining social functioning." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.03(B), 12.04(B). To the extent the ALJ's ruling that Moore did not meet the relevant listing of impairments was based on such an analysis, that ruling was erroneous.

The ALJ apparently ignored the second aspect of our *Singletary* decision as well. In that case we held:

> A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.

*Singletary,* 798 F.2d at 822. Thus, the agency must determine that the claimant can "obtain and maintain employment." *Id.* at 823 (emphasis omitted); *see Leidler v. Sullivan,* 885 F.2d 291, 292–93 (5th Cir. 1989). The ALJ made no such finding in this case. The closest the ALJ came to addressing the issue was the following comment: "After assessing the claimant's remaining capacity for work and the physical and mental demands of the work she has done in the past, the Administrative Law Judge further concludes that the claimant has the residual functional capacity to do her past relevant work." R. 15. This is not the type of finding contemplated in *Singletary.* Although the comment suggests that Moore would be able to do such work at some point, it does not reflect a conclusion that Moore will be able to maintain employment for significant periods of time.

■ The Secretary suggests that notwithstanding these errors we should affirm the denial of Moore's application because "the record contains substantial evidence that the claimant has been able to perform her past relevant work at all times since at

least May of 1985." The Secretary thus contends that "[t]his case does not involve the situation where the claimant would be able to hold a job for only a brief periods [sic] of time due to a mental impairment." In essence, this argument asks us to presume that the ALJ would have reached the same conclusion had he applied the proper legal standards for evaluating Moore's entitlement to benefits. We refuse to make such a presumption. Although there is evidence in the record that would support a conclusion that Moore could obtain and maintain employment, there is also some rather substantial evidence that Moore would have trouble functioning in an employment setting. Where the agency applies proper legal standards in denying benefits, we must uphold the decision if it is based on substantial evidence. However, where "the Secretary has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial." *Leidler*, 885 F.2d at 294.

We reverse the judgment of the district court and remand to that court with instructions to remand the case to the Secretary for further consideration.

REVERSED and REMANDED.