Linda L. BENTON, Plaintiff,

v.

Louis J. SULLIVAN, or his successor, as
Secretary of Health and Human
Services, Defendant.

Civ. A. No. 92–F–1027.

United States District Court,
D. Colorado.

Sept. 8, 1992.

Bethiah Beale Crane, Crane & Tejada, Durango, CO, for plaintiff.

Michael J. Norton, U.S. Atty., Stephen D. Taylor, Asst. U.S. Atty., Denver, CO, for defendant.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the Court on Plaintiff Linda Benton's Complaint for Judicial Review. Plaintiff seeks review of a final decision of the Secretary of Health and Human Services ("Secretary") denying her application for Social Security disability insurance benefits under Title II and Title XVI of the Social Security Act. Jurisdic-

tion is based on 42 U.S.C.A. § 405(g). The Court has carefully reviewed the administrative record and the litigants' pleadings. For the reasons stated below, the decision of the Secretary is REVERSED.

### I.

Plaintiff is a forty-year-old resident of Cortez, Colorado.[1] Plaintiff first entered the workforce when she was thirteen, never having completed school beyond the level of fifth grade. She has no G.E.D., no vocational training, can barely comprehend what she reads, and can perform only very limited mathematical calculations. Intelligence and aptitude tests indicate low scores in aptitudes as well as general educational development. Plaintiff has testified that despite a year's worth of study, she has been unable to learn the multiplication tables for the G.E.D.

On August 9, 1986, while working as a waitress, Plaintiff incurred injuries to her neck, back, hip, and head as a result of a work-related fall. After three years of being unable to work, Plaintiff applied for Social Security disability insurance benefits on December 7, 1989. She was denied initially and upon reconsideration. On August 6, 1990, Plaintiff timely filed a request for a hearing. An administrative hearing was held on April 10, 1991 before Administrative Law Judge ("ALJ") Jon D. Boltz. The ALJ found Plaintiff not to have been under a disability during the period encompassing the onset of her injury through the date she was last insured, March 31, 1987. On September 10, 1991, Plaintiff filed a request for review with the Administrative Appeals Council. On March 27, 1992, her request for review was denied. Plaintiff brought this action on appeal to the district court, alleging that the ALJ, in finding Plaintiff not disabled, applied improper legal standards and made findings not supported by substantial evidence.

Plaintiff's tale of pain and suffering following her fall is an undisputed litany of ailments. On August 11 and 13, 1986, Plaintiff was examined by Dr. Gerald Howe, the family physician, who diagnosed cervical and LS strain to her back and prescribed medication. On September 2, 1986, neurologist Franklin Tod Welch confirmed a cerviothoracic strain which he thought would heal over time. Just over two weeks later, Dr. Howe again examined Plaintiff and found her to be suffering from injuries to her neck, right hip and LS spine, as well as from cervical strain and contusions. Dr. Howe indicated that the date by which Plaintiff could return to work was unknown.

On October 22, 1986, in the first of many examinations, Gary A. Scott, M.D., orthopedic surgeon, diagnosed Plaintiff with an injury to the soft tissue of her back. He recommended therapy and gave her a home cervical traction device and a soft cervical collar for nighttime use. On December 19, 1986, Dr. Scott interpreted x-rays to diagnose "very early mild cervical spondylosis" and released her for "some light duty work." He also suggested trigger point therapy as an alternative or addition to Plaintiff's anti-inflammatory medication. On February 13, 1987, a vocational rehabilitation services vendor hired by Plaintiff's insurer determined that Plaintiff felt persistent pain at the base of her skull and neck and across her left shoulder; that overhead reaching was painful; that she had been experiencing blurred vision and pressure in her head; that she could neither lift objects nor drive a car; and that she slept poorly.

Over the next several months, Dr. Scott saw the Plaintiff on numerous occasions. He continued to recommend injections, which Plaintiff feared and initially refused, and kept Plaintiff on a physical therapy schedule. He noted Plaintiff's "flat affect" and mentioned the possibility of an underlying depression attributable to Plaintiff's chronic pain. On March 19, 1987, Dr. Scott reported Plaintiff's attitude as upbeat and her condition improved, and on April 1,

---

**1.** All factual recitations in this Order have been alleged in the litigants' pleadings or are con- tained in the administrative record.

1987,[2] he released her to return to full duty work, reserving the right to change his opinion if Plaintiff was not, in fact, able to tolerate the work. Plaintiff attempted to work part-time as a hostess in April and May, but complained to Dr. Scott of debilitating pain and limited motion. Dr. Scott encouraged her to try to continue to work, but later advised her to stop working when the pain symptoms increased. By July of 1987, for the purpose of her workers' compensation claim, Dr. Scott determined that Plaintiff should be returned to temporary total disability status. Plaintiff's status subsequently fluctuated between temporarily marked improvement and severely limited motion, limited capacity to stand or sit for more than a few hours at a time, and an impaired ability to reach or lift objects.

Following Dr. Scott's recommendation, on February 19, 1988, Plaintiff was examined by Benjamin L. Crue, M.D., neurosurgeon, who diagnosed "greater occipital neuralgia from a chronic intractable benign pain syndrome." Subsequently and with no apparent explanation, Dr. Scott stated that Plaintiff could return to work as a waitress, though after a later examination on June 28 he prescribed more medication for Plaintiff's complaints of tenderness, headaches, neck pain, and limited range of motion. Finally, on July 12, 1988, a Magnetic Resonance Imaging test (MRI) showed "[m]ild C4–5 diffuse disk bulge causing mild diffuse cord compression and small central C6–7 disk herniation, causing mild focal cord compression." Upon reviewing this objective evidence, Dr. Scott stated that "this would potentially explain some of the patient's symptomatology" and "would tend to support to some degree her subjective complaints of pain."

Dr. Scott then referred Plaintiff to Fredrico Mora, M.D., another neurosurgeon, who diagnosed an "atypical cervical syndrome of two years [sic] duration, resulting from trauma to the neck and causing primarily neck and head pain." Dr. Mora performed surgery consisting of a diskectomy and interbody fusion, C6–7, with right hip graft on January 13, 1989. Plaintiff's condition initially improved; however, prob-

ably as a result of the many medications prescribed by the many doctors who had examined Plaintiff, Plaintiff experienced edema of her extremities, suffered frequent vomiting and digestive problems, lost over 40 pounds, became dehydrated, lost some of her hair, and was diagnosed with gastritis pernicious anemia. By October 19, 1989, Plaintiff told Dr. Howe: "I feel horrible. I've never felt this bad in my whole life."

Examinations over the next two years by a vocational rehabilitation counselor and other physical therapists revealed continuing problems of pain, low functional capability, and no work capability. Mary Katherine Ames, M.D., added her opinion that Plaintiff's most limiting problems included her loss of memory, inability to learn, and anxiety. In an examination ordered by the ALJ on May 22, 1991, Dr. Thomas C. Fleming found that Plaintiff should not lift over 10 pounds frequently or 20 pounds total, and recommended that she only perform work that allowed her to sit down. Plaintiff attempted to work in a warehouse in October of 1991, but was unable to perform the duties for more than a few days and eventually had to stop. Dr. Ronald J. Brennan examined Plaintiff in connection with her workers' compensation claim and by December 27, 1991, concluded:

> The medical records indicate that Ms. Benton is precluded from sitting, standing, and walking for significant periods of time. For an individual with marginal education and these physical limitations and restrictions, alternative employment is virtually nonexistent.

Plaintiff's household tasks are now performed by her adult daughter.

## II.

Any disability evaluation under the Social Security Act proceeds under a five-step sequential process. 20 C.F.R. § 404.-1520 (1991). Those five steps are as follows: (1) whether the claimant is working; (2) whether the impairment is severe; (3) whether the impairment meets or equals an impairment listed in Appendix 1; (4) whether the claimant perform past relevant

---

**2.** The ALJ's examination of the facts on record ended with the facts as they existed on March 31, 1987.

work; and (5) whether there is other work the claimant could perform considering her functional capacity, age, education, and past work experience.

■ In reviewing a disability evaluation by the Secretary, district courts are limited to determining whether the decision is based on substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). A district court cannot reweigh evidence or substitute its judgment for that of the ALJ. *Id.* In order to hold that the Secretary's determination is supported by substantial evidence, there must be material evidence in the record that a reasonable person could deem adequate to support that determination. *Id.* Substantial evidence is "more than a mere scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427; *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir.1988).

■ However, evidence is not to be deemed substantial if it is overwhelmed by other evidence, *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir.1990), or if it is merely a conclusion of the ALJ. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988). The record as a whole must be considered in drawing a conclusion. *Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987). And although the ALJ is in the best position to assess the credibility of the claimant, the district court cannot merely rubber stamp his decision. *Pettyjohn v. Sullivan*, 776 F.Supp. 1482, 1485 (D.Colo. 1991).

### III.

Title XVI of the Social Security Act entitles every disabled person who meets certain income requirements to SSI benefits. 42 U.S.C.A. § 1382. A person is considered disabled if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months ..."

42 U.S.C.A. § 1382c(a)(3)(A) (West 1992). An individual

> shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...

42 U.S.C.A. § 1382c(a)(3)(B).

■ Under the Act, a claimant must carry the initial burden of proving a physical or mental impairment that prevents her from engaging in her prior work activity. *Gossett*, 862 F.2d at 804. Once the claimant proves a limiting impairment, the burden of proof shifts to the Secretary to show that, considering the claimant's impairments and limitations, alternative employment in the national economy exists. *Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 776 (10th Cir.1990).

### IV.

In this case, two primary issues can be gleaned from the extensive factual record. First, whether the ALJ erred in considering only that evidence of disability which was available during the period of Plaintiff's insured status, i.e., August 9, 1986 to March 31, 1987, and second, whether viewing the record as a whole leads ineluctably to the conclusion that Plaintiff was in fact disabled and entitled to benefits. We answer both in the affirmative.

■ We find that the ALJ erred as a matter of law in examining only that evidence available as of March 31, 1987. Even if there were not sufficient evidence in the record by March 31 to support a finding of disability—a questionable conclusion at best—ample evidence turned up by the time of the ALJ's hearing to support such a finding. No fault is to be imputed to the claimant for her doctors' inability to pinpoint the source of her troubles by the time her insurance ended. There is no requirement in statute or in the regulations that a claimant be subject to the vicissitudes of expert medical opinion or the tar-

diness of science in arriving at definitive diagnoses. In fact, due to the ALJ's improper application of the appropriate statute and regulations, several points ought to be clarified.

 First, contrary to the ALJ's assertion, a claimant need only show that the onset of her disability occurred during the insured period; she need not prove the existence of her disability before that period ends. To hold otherwise would be to deny benefits to claimants for reasons wholly apart from whether they are, in truth, disabled. Second, while a claimant must be able to show that her disability "has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C.A. § 1382c(a)(3)(A), there is no requirement that the period be measured from the date of injury. The very fact that the duration requirement explicitly looks both forward for one year and backward for one year shows the faultiness of such a conclusion.

 Similarly, contrary to what the ALJ would have Plaintiff prove, a claimant need not show that she has already suffered 12 continuous months of disability; a claimant need only show that the disability *can be expected* to last for 12 months. *See e.g., Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir.1990). The analysis can be prospective as well as backward-looking. Any other reading would arbitrarily deny entitlements to a claimant whose insured status ended before the requisite 12 months of suffering had passed.

 Examining the record a whole, it is amply clear that Plaintiff has suffered prohibitive disability since August 9, 1986. The ALJ had substantial evidence in the record even as of March 31, 1987 which might have permitted a finding of disability. Even if the ALJ was reasonable in determining that Plaintiff was not disabled based on the evidence available as of March 31, 1987, once the beacon of subsequent events is focused on the less developed record as of March 31, 1987 there can be no doubt that Plaintiff's disability was genuine and her complaints of pain true.

Before and after March 31, 1987, several independent doctors and therapists agreed on the debilitating severity of Plaintiff's pain. An MRI scan revealed objective, physiological phenomena that led one neurosurgeon to perform a major operation. The MRI scan led Dr. Scott to concur that Plaintiff's subjective pain may have had some real basis after all. While the ALJ relied heavily on Dr. Scott's earlier assessments, he ignored Dr. Scott's final, post-MRI assessment. He also ignored the evaluation of the doctor he appointed and the many experts who examined Plaintiff and found her unable to move without pain. Viewing the record as a whole, then, Plaintiff's claims of pain and physical limitation are realistic and documented.

Questions about Plaintiff's credibility up to March 31, 1987 were erased by later, consistent evidence. The later evidence should have been examined by the ALJ, even if it were not to be used in the disability determination but merely as a logical means of assisting the determination of credibility. "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted). The findings of the ALJ in this case are not based upon substantial evidence.

## V.

ACCORDINGLY, it is ordered:

1) The decision of the Secretary is REVERSED.

2) The action is REMANDED to the Secretary for calculation of benefits.