Atiya v. HHS                                    CV-93-229-B    08/24/94

UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF NEW HAMPSHIRE


Salahdin Atiya

        v.                                          Civil No. 93-229-B

Donna E. Shalala


                            O R D E R

        Salahdin Atiya challenges the Secretary of Health and Human

Services' denial of his application for Social Security

disability benefits.  Because I determine that the ALJ used

incorrect legal standards in making her Step 3 determination, I

vacate the Secretary's decision and remand the case for further

proceedings consistent with this Order.


                    I.  **STANDARD OF REVIEW**

        Pursuant to 42 U.S.C.A. § 405(g), the court is empowered to

"enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the

Secretary, with or without remanding the cause for a rehearing."

In reviewing a Social Security decision, the factual findings of

the Secretary "shall be conclusive if supported by 'substantial

evidence.'"  Irlanda Ortiz v. Secretary of Health & Human Serv.,

955 F.2d 765, 769 (1st Cir. 1991) (quoting 42 U.S.C. § 405(g)).

Thus, the court must "'uphold the Secretary's findings . . . if a
reasonable mind, reviewing the evidence in the record as a whole,
could accept it as adequate to support [the Secretary's]
conclusion.'" Id. (quoting Rodriquez v. Secretary of Health &
Human Serv., 647 F.2d 218, 222 (1st Cir. 1981)). Moreover, it is
the Secretary's responsibility to "determine issues of
credibility and to draw inferences from the record evidence," and
"the resolution of conflicts in the evidence is for the
Secretary, not the courts." Irlanda Ortiz, 955 F.2d at 769
(citing Rodriquez, 647 F.2d at 222). However, where the
Secretary relies on an incorrect legal standard in assessing the
evidence, a remand is warranted. Hughes v. Shalala, 23 F.3d 957
(5th Cir. 1994); Emory v. Sullivan, 936 F.2d 1092, 1093 (10th
Cir. 1991).


## II.  BACKGROUND

Atiya suffers from residual pain and ambulatory limitations
resulting from an automobile accident in which he fractured his
pelvis and sustained a mild widening of his left sacroiliac
joint. His hospital course was one of gradual improvement.
However, following discharge he complained of pain and weakness

2

affecting his back and pelvis.  Eleven months later Atiya was involved in a second automobile accident in which he hit his head against the window of his car.  Atiya continually complained of both pain and numbness of his lower extremities, although no weakness was detected by his doctors until January, 1992.

Atiya applied for disability insurance and Supplemental Security Income benefits on February 19, 1991, alleging an inability to work since March 14, 1990.  His initial applications and his request for reconsideration were denied.  Thereafter, on March 26, 1992, an Administrative Law Judge considered the matter de novo.  Applying the five-step sequential analysis outlined in 20 C.F.R. § 404.1520, the ALJ determined that Atiya was not disabled under Step 3.  Under Step 4, the ALJ determined that Atiya was not able to return to his past relevant work as a waiter or food service preparer.  However, using a combination of the testimony of the Vocational Expert and the rules contained in the medical vocational guidelines of the grid, she concluded under Step 5 that Atiya was capable of performing a number of jobs which exist in the New England and national economies, and thus that he was not disabled.  The Appeals Council denied Atiya's request for review on February 23, 1993.

3

## III.  DISCUSSION

Atiya challenges: (1) the ALJ's Step 3 determination, (2) her evaluation of his pain complaints, (3) her alleged failure to consider his medication side effects, and (4) her alleged reliance on the guidelines found in 20 C.F.R. Part 404, Subpart P, App. 2 ("the grid").  Because I conclude that the Secretary used incorrect legal standards at Step 3 in determining that Atiya's condition failed to meet the listing requirement for spinal disorders, I do not address Atiya's other arguments.

At Step 3 of the sequential analysis, the claimant bears the burden of proving that he or she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Secretary's regulations.  Dudley v. Secretary of Health and Human Services, 816 F.2d 792, 793 (1st Cir. 1987).  If the claimant meets this burden, the Secretary is required to find the claimant disabled, and need go no further in the evaluation process.  Id.; See 20 C.F.R. 404.1520(d).

The listing requirements for a spinal disorder, found in 20 C.F.R. 404, Subpart P, Appendix 1, 1.05C, state in relevant part:

4

1.05 Disorders of the spine:

C. Other vertebrogenic disorders (e.g., herniated
nucleus pulposus, spinal stenosis) with the following
persisting for at least 3 months despite prescribed
therapy and expected to last 12 months.  With both 1
and 2:

    1. Pain, muscle spasm, and significant
    limitation of motion in the spine;  and

    2. Appropriate radicular distribution of
    significant motor loss with muscle weakness
    and sensory and reflex loss.

To meet a spinal impairment listed in §1.05C Atiya must be diagnosed as having a vertebrogenic disorder and have the findings shown in 1 and 2 above.  20 C.F.R. § 404.1525(d).  To equal a listed spinal impairment, Atiya's impairment must at least equal the listed impairment's severity and duration.  20 C.F.R. § 404.1526(a).  Both types of determinations must be based on medical evidence supported by medically accepted clinical and diagnostic techniques.  Id. at (b); § 404.1525(c).

Atiya relies primarily on a January 14, 1992 report and subsequent May 21, 1992 letter from his treating physician, Dr. Kilgus, to support his argument that his spinal condition meets or equals that listed in §1.05C.  In his report Dr. Kilgus noted that

[c]linical exam indicated the presence of a fair range
of motion of the LSS with mild pain and spasm on

5

extremes of motion. There was still some tenderness on compression of the pelvis. A good range of motion was noted of the hip joints but pain was noted on extremes of flexion and rotation. Neurologically the patient demonstrated a decrease in sensation affecting the lateral and medial aspects of the right lower extremity. Some weakness was noted in the ankle dorsiflexors and evertors of the foot. The left lower extremity demonstrated a slight alteration of sensation in the lower leg but no clear pattern could be detected.

In a May 1992 letter based on the same examination, Kilgus stated that

I reviewed the records of my examinations of Salahdin Atiya. He was last examined by me on January 14, 1992. In the course of that examination, he did demonstrate a decrease in sensation along the lateral aspect of the right lower extremity. This has certainly persisted for at lease three months and can be expected to last for a considerable period of time afterward, that is longer than twelve months. In fact, I think this condition is permanent. It does result in pain, muscle spasm as well as limitation of motion in the lumbar spine.

Thus, I do think this patient does satisfy criteria which are listed in the listings under category (C).[1]

The ALJ offered three independent grounds to support her Step 3 rejection of Dr. Kilgus' opinions. First, she observed that

[t]he medical evidence has been reviewed first upon

_____

[1]In fairness to the ALJ, I note that Dr. Kilgus' initial report was not a model of clarity, and his May 1992 letter was not prepared until after the ALJ issued her decision.

6

> initial determination and then upon reconsideration determination by medical professionals who have made the comparison between the claimant's symptomatology as documented in the record and the predetermined medical criteria of Listing 1.05C and have determined that the claimant's symptomatology does not reflect and is not consistent with the predetermined medical criteria [of listing 1.05C.]

Second, she stated that "there is no indication that the symptoms required by Listing 1.05C have persisted for a 12-month durational period." Finally, she observed that other physicians who examined Atiya prior to Dr. Kilgus' January 14, 1992 examination did not find that Atiya's condition met or equalled the applicable listing. The difficulty with this analysis is that each of these grounds incorrectly applies the legal standards governing an ALJ's Step 3 determination.

The ALJ's first ground is premised on an erroneous conception of her role in the decision-making process. While it may well be true that the "medical professionals" who reviewed Atiya's disability application are better qualified to determine whether Atiya's symptoms meet or equal a particular listing than the ALJ, the law requires that the ALJ determine this issue de novo. 42 U.S.C. § 405(b); Heckler v. Day, 467 U.S. 104, 107 (1984); Crosby v. Social Security Admin., 796 F.2d 576, 578 n.1 (1st Cir. 1986). Thus, she may not blindly defer to

7

determinations by other agency officials simply because they may be better qualified to make a particular determination.

The ALJ's second supporting ground misconstrues the listing requirement for spinal disorders. Contrary to the ALJ's statement, the listing does not require that Atiya's condition must have met or equalled the listing conditions for the 12 months preceding Dr. Kilgus' diagnosis. Instead, the listing requires only that the disability condition must have existed for at least three months and that it be expected to last 12 months. 20 C.F.R. 404, Subpart P, Appendix 1, 1.05(C); see also 42 U.S.C. § 416(i)(1); Benton v. Sullivan, 801 F. Supp. 435, 440 (D. Colo. 1992). Accordingly, the ALJ cannot premise her Step 3 determination on a conclusion that disability has not been established simply because Atiya's condition did not meet the listing conditions in the 12 months prior to Dr. Kilgus' diagnosis.

The ALJ's final ground cannot support her decision because she did not identify evidence that was inconsistent with Dr. Kilgus' conclusion that Atiya's condition satisfied the requirements of the spinal disorder listing. If the ALJ had rejected Dr. Kilgus' conclusion because it was inconsistent with prior conclusions reached by other physicians who had examined

8

Atiya, I would have sustained the ALJ's decision as long as it was supported by substantial evidence. However, the ALJ did not so find, but instead merely noted that other physicians who had examined Atiya before Dr. Kilgus had not concluded that his condition was severe enough to meet the listing's requirements. Unless the ALJ can point to evidence in the record that is sufficiently inconsistent to warrant the rejection of Dr. Kilgus' reports, the ALJ must accept these reports in reaching her decision.[2] Rosado v. Secretary of Health and Human Services, 807 F.2d 292, 293-94 (1st Cir. 1986).

In summary, since the ALJ used incorrect legal standards in determining that the claimant's condition did not meet or equal the spinal disorder listing, I remand the case for reconsideration under the legal standards set forth in this

---

[2]In declining to review the ALJ's decision, the Appeals Council noted that Dr. Kilgus' report is internally inconsistent because he concludes that Atiya had a residual functional capacity to perform some work while at the same time concluding that Atiya's condition satisfies the listing's requirements. This argument is unavailing because it posits an inconsistency that does not necessarily exist. Dr. Kilgus could well have found that the listing's requirements had been satisfied even though Atiya had some residual work capacity. If the listing has been drafted too broadly, the Secretary may not ignore it simply because a claimant retains a residual work capacity.

9

order.[3]


## IV.  CONCLUSION

For the foregoing reasons Plaintiff's Motion for Order Reversing the Decision of the Secretary (document no. 11) is granted, and the case is remanded for further consideration consistent with this Order.

SO ORDERED.


_____
Paul Barbadoro
United States District Judge

August 24, 1994

cc:  Robert L. Elliott, Esq.
     Patrick M. Walsh, Esq., AUSA

_____

[3]It is not clear from the record whether Atiya necessarily met the listing's severity requirements of <u>significant</u> limitation of motion in the spine and <u>significant</u> motor loss.  Such a determination must be made on remand.  Further, if the ALJ determines that Atiya's condition met or equalled the listing requirement or that he is otherwise disabled, she will have to determine the onset date of the disability in accordance with Social Security Ruling 83-20.

10