United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 27, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-50421
Summary Calendar

CHARLIE M. BECK,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART
COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
(04-CV-148)

Before JONES, Chief Judge, and KING and DAVIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Charlie M. Beck appeals the district court judgment affirming the administrative law judge's ("ALJ") determination that she is not entitled to Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act.

Beck alleges several grounds for reversal by this court,

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

namely, that the ALJ (1) failed to apply the proper legal standard in evaluating the cumulative impact of her impairments; (2) improperly discounted the aggravating effect of obesity on her other impairments; (3) improperly evaluated the subjective symptoms of impairment presented at the hearing; and (4) failed to conform his residual functional capacity ("RFC") determination to the legal standard required by this court or support it with substantial evidence from the record. Finally, Beck alleges that the Appeals Council erred in rejecting her request for remand and reconsideration by the ALJ. We address each of her claims in turn.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Claimant Charlie M. Beck was 54-years old at the time of the administrative law hearing and has an eleventh-grade education. She has not been employed since at least 1985, but worked sporadically as a babysitter for her daughter's children until the onset of her physical ailments.

On March 15, 2002, Beck protectively filed her second application for SSI under Title XVI of the Social Security Act, alleging that she was unable to engage in substantial gainful activity due to high blood pressure, osteoporosis and rheumatoid arthritis. Her application is composed substantially of medical records from the Medical Center Hospital in Odessa, Texas, where Beck has sought various out-patient medical treatment since July 1999.

In March 2002, Beck underwent knee and lumbar spine x-rays in response to complaints of fatigue and back pain. The doctor's report noted "moderate changes of degenerative disc disease at L3-4 with no evidence of fracture or spondylolisthesis" and arrived at a conclusion of "no acute findings."

Two months later, on May 23, Beck requested an internal medicine consultative examination for purposes of obtaining an SSI disability determination. In his post-examination report, Dr. Madhu Pamganamamula recorded that Beck complained of frequent joint pain in both hips, numbness in her lower extremities, dyspnea, and intermittent chest pain. Dr. Pamganamamula noted that Beck had a normal gait and no difficulty walking or performing everyday tasks, although she did require periodic rest breaks when shopping or attending church. Dr. Pamganamamula concluded that Beck's hypertension was adequately controlled by medication and that she displayed only "mild functional impairment secondary to her medical conditions."

The Social Security Administration's Disability Determination Services ("DDS") then conducted an RFC evaluation. Dr. Barnes, the reviewing physician, found that Beck was capable of occasional lifting/carrying of 50 pounds, frequent lifting/carrying of 25 pounds, and that she could stand or walk (with normal breaks) for about 6 hours in an 8-hour workday. He noted no manipulative/motor problems, and no visual or communicative difficulty, concluding that the physical impairments alleged by

3

Beck were "not fully supported" by his observations. Both the opinions of Drs. Pamganamamula and Barnes were included in Beck's SSI application.

The Social Security Administration initially denied Beck's application on June 17, 2002. Her petition for reconsideration was denied on September 13, 2002. Beck then timely requested a hearing for de novo review of her application before an ALJ, held on February 12, 2003. Beck, represented by counsel, testified at the hearing.

The ALJ issued an unfavorable decision on April 7, 2003, finding that Beck retained sufficient residual functional capacity and relevant vocational characteristics required for performance of medium work activity and was therefore not disabled, as defined in the Social Security Act, at any time through the date of the administrative law hearing. The ALJ further concluded: that Beck had no relevant past employment history or skills; that although Beck's subjective complaints of pain were related to medically determinable physical impairments, Beck's testimony regarding her subjective complaints and functional limitations was not credible or reasonably supported by objective medical evidence; and that medical evidence produced by Beck established the existence of severe impairments including hypertension, osteoarthritis, GE reflux, and obesity, but that no single impairment or combination thereof was sufficiently severe to qualify her for SSI.

Undeterred by the ALJ's ruling, Beck requested review by

4

the Appeals Council and accompanied her application to that body with an x-ray of her left knee and a bilateral lower extremity Doppler study, both of which were performed within two months after the ALJ's unfavorable ruling. The knee x-ray report showed no bone, joint or soft tissue abnormalities and presented no evidence of fracture or dislocation. The Doppler study showed that Beck suffered from peripheral vascular disease characterized by significant stenosis in the right common femoral artery. On September 10, 2004, after considering Beck's entire record, including the two new medical reports, the Appeals Council denied Beck's SSI application, thus rendering the ALJ's April 7, 2003, ruling the final administrative determination of the Commissioner of Social Security.

Beck then sought judicial review of the Commissioner's decision in the district court. On January 25, 2006, after de novo review, the district court, the Hon. Robert Junell, United States District Judge for the Western District of Texas, issued a Final Judgment and Order adopting the magistrate judge's report and recommendation to affirm the commissioner's decision and dismissed Beck's complaint with prejudice. Beck now appeals the district court judgment.

## II. DISCUSSION

The SSI administrative review process includes an initial determination of eligibility, reconsideration, a hearing before an

5

ALJ, and review by the Appeals Council, 20 C.F.R. § 416.1400(a)(1)-(4), whereupon a still-unsatisfied claimant may seek review by the district court, and, ultimately, this court. Id. § 416.1400(a)(5).

## 1. Standard of Review

On appeal before this court, the ALJ's determination that an SSI claimant is not disabled will be upheld if it is based upon substantial evidence from the record as a whole and if proper legal standards were applied in consideration of the evidence. See 42 U.S.C. § 405(g); Higginbotham v. Barnhart, 405 F.3d 332, 335 (5th Cir. 2005); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence requires more than a scintilla, but less than a preponderance, and is such relevant evidence that a "responsible mind might accept as adequate to support a conclusion." Watson v. Barnhart, 288 F.3d 212, 215 (5th Cir. 2002) (citing Villa, 895 F.2d at 1021-22). Substantial evidence will be lacking "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989)(citing Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)(per curiam)). This court will not reweigh the evidence de novo or substitute its judgment for that of the Commissioner, Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987), even if we believe the evidence weights against the Commisioner's decision, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).

6

## 2. Combined Impact of Impairments

Beck alleges that the ALJ did not properly evaluate the combined impact of her impairments and as a result underestimated the severity of her disability. We have held on numerous occasions that in making a disability determination, the examining ALJ must analyze the disabling effect of both the claimant's ailments individually and for their cumulative impact. See, e.g., Loza v. Apfel, 219 F.3d 378, 399 (5th Cir. 2000); Crowley v. Apfel, 197 F.3d 194, 197 (5th Cir. 1999); Fraga, 810 F.2d at 1305; see also 20 C.F.R. §§ 404.1523, 416.923. Additionally, a finding of nonseverity based upon the failure to examine the cumulative impact of a claimant's alleged impairments is per se not supported by substantial evidence. Wingo v. Bowen, 852 F.2d 827, 830-31 (5th Cir. 1988); Loza, 219 F.3d at 394.

The ALJ's findings in this case adequately adhere to the analytical mandates outlined above. In performing his cumulative impact analysis, the ALJ relied on Beck's own testimony, the reports of her treating physicians, and the DDS examiner to conclude that she suffered from severe impairments. The ALJ then determined that the cumulative impact of Beck's impairments did not combine to limit her functional capacity and she therefore did not satisfy the requirements for SSI eligibility. See Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ's analysis is supported by substantial evidence and satisfies

7

the proper legal standard required under our cumulative impact jurisprudence.[2]

## 3. Consideration of Obesity in the Evaluation Process

As a corollary to her cumulative impact argument, Beck posits that the ALJ failed to consider that obesity has a multiplier effect whereby it can exacerbate existing ailments and magnify their cumulative impact. In so doing, Beck contends, the ALJ rendered a decision unsupported by substantial evidence and based on an erroneous legal standard. This contention is without merit.

Social Security rulings indicate that obesity – although itself not a listed impairment – can reduce an individual's occupational base for work activity in combination with other ailments. See SSR 02-1p (stating that obesity remains a complicating factor for many ailments and is a "medically determinable impairment" to be considered in assessing an individual's RFC); SSR 96-8p (stating that the effects of obesity may be considered as part of an RFC's function-by-function

_____

[2]Beck's attempt to analogize the ALJ's findings in this case with those of the ALJ in Scott v. Heckler, 770 F.2d 482 (5th Cir. 1985), is not on point. In Scott, we determined that an ALJ's conclusory "evaluation of the evidence" without consideration of the combined impact of a claimant's impairments incorrectly applied the legal standard for cumulative impact required by this court. 770 F.2d at 487. Here, however, the ALJ's inquiry is squarely in line with the requirement that an ALJ "consider the combination of unrelated impairments 'to see if together they are severe enough to keep the claimant from doing substantial gainful activity.'" Id. (citing Dorsey v. Heckler, 702 F.2d 597, 605 (5th Cir. 1983)).

analysis); 64 F.R. 46122 (retracting obesity as a listed impairment under 20 C.F.R., Subpart P, Appendix 1).

In spite of Beck's failure to specifically allege obesity as a disability justifying award of SSI – her application states that the only illnesses limiting her ability to work are "high blood pressure, osteoporosis, and rheumatoid arthritis" – the ALJ independently acknowledged that obesity should be considered in conjunction with her other impairments.[3] In accord with applicable Social Security rulings, the ALJ considered Beck's obesity in combination with her other impairments in making his RFC determination, and discussed her ability to perform sustained work activities. See SSR 02-1p & 96-8p. There is no support for Beck's contention that the ALJ's decision was not characterized by substantial record evidence.

Nor is there any basis for the allegation that the ALJ applied an erroneous legal standard in his appraisal of the effect of obesity on Beck's combined impairments. Beck's contention to the contrary, citing our decision in Moore v. Sullivan, 895 F.2d 1065 (5th Cir. 1990), is unpersuasive on this account. In Moore, an ALJ incorrectly rejected an application for SSI benefits based on the conclusion that the claimant's mental disorder did not

---

[3]The ALJ stated in his second finding that "[t]he medical evidence establishes that claimant has severe impairments, including hypertension; osteoarthritis; GE reflux: and obesity (approximate body mass index: 36), but she does not have an impairment or combination of impairments that are listed in, or that equal in severity an impairment found in the Listing...."

prevent her from gainful employment for a minimum of twelve months prior to her eligibility. The legal standard applied by the ALJ was in direct contradiction to this court's decision in <u>Singletary v. Bowen</u>, 798 F.2d 818 (5th Cir. 1986), which held that the only durational requirement contained in the relevant statute was that the impairment last or be expected to last for twelve months. Here, in stark contrast to the ALJ's obvious disregard of applicable law in <u>Moore</u>, there is no indication that the ALJ has misapplied the applicable legal standards in holistically evaluating Beck's impairments in conjunction with her obesity, or that he ignored the possibility that obesity aggravates some of Beck's unquestionably serious physical conditions.

## 4. Evaluation of Subjective Symptomology

Beck next contends that the ALJ failed to make adequate credibility findings regarding her subjective symptomology, specifically, her complaints of arthritic joint pain, as required under SSR 96-7P, SSR 96-8P and 20 C.F.R. § 416.929, and that his credibility determination is supported neither by substantial evidence nor applies the proper legal standard to the evidence of record.

Once a medical impairment is established, an ALJ "must consider subjective evidence of nonexertional ailments, such as pain, which may have a disabling effect." <u>James v. Bowen</u>, 793 F.2d 702, 706 (5th Cir. 1986). Pain constitutes a disabling condition,

10

however, only when "it is constant, unremitting, and wholly unresponsive to therapeutic treatment." Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985).

The standard for evaluation of subjective symptoms such as pain is found at 20 C.F.R. § 416.929 and is explained further in SSR 96-7p. In summary, even if a claimant's subjective symptoms are not fully justified by objective medical evidence, the ALJ cannot disregard them but must make a credibility finding based on the entire record. See, 20 C.F.R. § 416.929 (outlining the evaluation calculus for determining and measuring the credibility of a claimant's subjective symptomology and symptom-derived functional limitations); SSR 96-7p (requiring case adjudicator to make specific findings of credibility based on the case record).

There is no basis for Beck's claim that the ALJ's determination lacked substantial evidentiary support. Beck's examining physicians detailed the impact of her impairments on her mobility and ability to function normally. According to the ALJ, her testimony at the administrative hearing conflicted significantly with these diagnoses. It is the role of the ALJ, not this court, to resolve such evidentiary conflicts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983); James, 793 F.2d at 706 (stating that an ALJ's findings regarding the credibility of subjective symptom testimony is "entitled to considerable judicial deference."). Quite simply, the ALJ evaluated the testimony and concluded that Beck's "subjective complaints are exaggerated."

11

This determination was based on reference to her own internally inconsistent testimony and medical reports detailing her condition.

Using the available medical evidence, the ALJ determined that Beck's physical pain was not of a disabling nature. In so doing, the ALJ in no way failed to make the necessary credibility choices and indicate the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of Beck's subjective symptoms and complaints. See Hayes v. Celebrezze, 311 F.2d 648, 653-54 (5th Cir. 1963). Accordingly, we do not disturb the credibility determination of the ALJ.

5. **The ALJ's Residual Functional Capacity Determination**

Beck further challenges the ALJ's residual functional capacity ("RFC") determination that she retains the exertional capacity for performance of the full range of medium work,[4] alleging that it is not based upon substantial evidence and does not apply the proper legal standards required by this court's decision in Myers v. Apfel, 238 F.3d 617, 620-621 (5th Cir. 2001), 20 C.F.R. § 416.967 and SSR 96-8p.

---

[4]20 C.F.R. § 416.967(c) provides that "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." Myers contains largely the same definition, with interpolations from SSR 96-8p and describes the various functions required for normal work activities, including exertional factors like "sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately." 238 F.3d at 620. SSR 96-8p provides in-depth guidelines describing the various exertional and nonexertional factors which should figure in the ALJ's determination.

12

In <u>Myers</u>, we held that when making an RFC determination for an SSI claimant, an ALJ must perform a function-by-function assessment of a claimant's capacity to perform sustained work-related physical and mental activities. 238 F.3d at 620-22. Beck argues that the absence of a function-by-function analysis in the ALJ's decision mandates reversal and remand.

The ALJ's RFC determination here was supported by substantial evidence and satisfies the standards announced in <u>Myers</u>. The ALJ based his decision in part on the medical reports of Drs. Pamganamamula and Barnes, which contain a general evaluation of Beck's mobility and a function-by-function analysis of the impact of her impairments on her ability to perform various tasks.[5] These reports, cited in conjunction with the ALJ's own appraisal of Beck's testimony and review of the record, are supported by substantial evidence and satisfy the <u>Myers</u> standard. <u>See</u> <u>Onishea v. Barnhart</u>, 116 F.App'x 1, 2 (5th Cir. 2004) (unpublished)(stating that an RFC assessment based in part on the function-by-function analysis of claimant's exertional limitations contained in a state examiner's medical report satisfies the legal standard set forth in <u>Myers</u> and SSR 96-8p).

**6. Submission of Additional Evidence to Appeals Council**

Finally, Beck contends that the additional evidence she

---

[5]The RFC assessment performed by Dr. Barnes specifically analyzes each separate exertional limitation according to the categories listed in SSR 98-6p and 20 C.F.R. § 416.967.

13

provided to the Appeals Council was new and material, requiring that body to refer the decision back to the ALJ for reconsideration. The Appeals Council disagreed with this contention and so do we. We have expressly declined to adopt Beck's position – the same one espoused by the 11th Circuit's ruling in Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998) – that the substantial evidence standard does not apply to evidence submitted to the Appeals Council and rejected by it as neither new nor material.[6] Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005) (rejecting the position adopted by the 11th Circuit in Falge). Accordingly, we agree with the Appeals Council and the District Court and find that the evidence submitted to the Appeals

---

[6]Beck contends that the test to be applied to evidence submitted to the Appeals Council after the ruling of an ALJ is the one announced in Falge, which states that in order to obtain remand a claimant must establish new, noncumulative evidence; prove that such evidence is material, i.e., relevant and probative so that a reasonable probability exists that it would change the administrative results; and provide good cause for failure to submit the evidence at the administrative level. 150 F.3d at 1323; see Keeton v. Dep't of Health & Human Svcs., 21 F.3d 1064, 1068 (11th Cir. 1994). This court rejected this view in Higginbotham and continue to adhere to that case's holding that after-submitted evidence considered by the Appeals Council constitutes part of the record upon which the final decision on eligibility is based, and that all record evidence, irrespective of its submission date, is subject to district court review. Higginbotham, 405 F.3d at 337. We find no occasion to hold that the district court should apply a different evidentiary standard to only certain portions of the Commissioner's final judgment. To do so would be an invitation to attorneys to "hold back some of their evidence in hopes of seeking reconsideration if proceedings are not initially successful for the clients" under the more stringent substantial-evidence standard. Higginbotham v. Barnhart, 163 F.App'x 279, 282 (5th Cir. 2006).

14

Council was not material and did not provide a basis for reversal, and that the ALJ's decision was based upon substantial evidence from the record as a whole.

### III. CONCLUSION

In light of the foregoing analysis of Plaintiff-Appellant's claims, we hereby AFFIRM the judgment of the district court.

AFFIRMED.