# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 99-2405MN

———————

Garland M. Ross,

        Appellant,

v.

Kenneth S. Apfel, Commissioner of
Social Security Administration,

        Appellee.

\*
\*
\*
\*
\*  On Appeal from the United
\*  States District Court
\*  for the District of
\*  Minnesota.
\*
\*
\*
\*

———————

Submitted: March 17, 2000
Filed: July 11, 2000

———————

Before RICHARD S. ARNOLD, LAY, and BEAM, Circuit Judges.

———————

RICHARD S. ARNOLD, Circuit Judge.


Garland Ross appeals the denial of his application for social-security disability benefits. He argues that the Administrative Law Judge (ALJ) based the denial on insubstantial evidence. The District Court upheld the denial. We agree with the claimant that the denial was not based on substantial evidence on the record as a whole, and we therefore reverse.

Mr. Ross is a 42-year-old man, and was first diagnosed with sickle cell anemia when he was six months old. Despite having sickle cell anemia, he worked as a factory laborer for Honeywell Corporation from 1978 to 1995. From May of 1995 on, his condition worsened. In March of 1995, Mr. Ross applied for disability insurance benefits. His claim was denied initially and on reconsideration. He filed a request for a hearing, which was held on September 12, 1996. A supplemental hearing was held on February 21, 1997.

The ALJ decided that Mr. Ross was not entitled to disability benefits. The ALJ found that he had not engaged in substantial gainful activity since May 14, 1995. The ALJ found that Mr. Ross had a severe impairment, but not one that qualified him for benefits under the impairments listed in the regulations. The ALJ found that the claimant's impairments prevented him from performing his past relevant work. However, the ALJ found that Mr. Ross retained the residual functional capacity to perform a limited range of sedentary work. Although he testified that his severe pain and fatigue limited his capacity to perform any work activity, the ALJ did not believe him.

The ALJ found that there were substantial inconsistencies in the record, and concluded that Mr. Ross's complaints of debilitating pain and fatigue were not credible. Specifically, the ALJ found that the objective medical evidence did not document physical abnormalities that could reasonably produce the type of pain he claimed, and that the claimant's overall daily activities were inconsistent with a complete inability to work. The ALJ also discredited the opinions of the treating physician, Dr. Londer, as not being adequately supported by appropriate clinical and diagnostic findings. The Vocational Expert testified that, given a residual-functional-capacity assessment that the claimant could perform a limited range of sedentary work, there were a significant

number of jobs in the national economy that Mr. Ross could perform. Therefore, the ALJ concluded that he was not eligible for benefits.

Mr. Ross appealed the ALJ's decision. The Appeals Council denied his request for review. He then appealed to the United States District Court for the District of Minnesota. That Court affirmed the ALJ's decision.

## II.

We review the decision of the ALJ to determine whether his findings are supported by substantial evidence on the record as a whole. Jenkins v. Apfel, 196 F.3d 922, 924 (8th Cir. 1999). Mr. Ross argues that the ALJ's credibility determination under Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), is not supported by the record. He specifically challenges three of the ALJ's findings, all of which are essential to the ALJ's holding that he is capable of sustaining substantial gainful activity at the sedentary level. First, the claimant challenges the ALJ's finding that the objective medical record does not document physical abnormalities reasonably capable of producing the intractable pain and fatigue that he alleged. Second, he maintains that the ALJ did not give the opinions of his treating physician, Dr. Londer, adequate weight. Third, he challenges the ALJ's finding that his daily activities are inconsistent with a complete inability to do any work.

## A.

At the hearing, Mr. Ross testified that his sickle cell anemia causes him severe pain and fatigue. He testified that he had no pain-free days. On the days when the pain is most severe, he takes his medication and lies still. On these days, he will spend the whole day in bed. When he is in so much pain that he cannot deal with it at home, he goes to the emergency room. However, Mr. Ross testified that three or four days out of the week the pain was somewhat better.

The ALJ found that "the objective record does not document physical abnormalities reasonably capable of producing the intractable pain or other symptoms alleged by the plaintiff." To support this, the ALJ referred to the testimony of Dr. Hammarsten, a medical expert who testified at the hearing. Dr. Hammersten commented on a medical report dated October 13, 1996, that stated that Mr. Ross had a microcytosis, which is a feature not associated with sickle cell anemia. Moreover, a microcytosis would suggest the presence of an alpha-thalassemia trait, which would be beneficial to Mr. Ross's condition.

We do not think that Dr. Hammersten's testimony about the microcytosis is probative evidence. Even if a microcytosis is not normally associated with sickle cell anemia, the Commissioner does not dispute that Mr. Ross does indeed have sickle cell anemia. Moreover, Dr. Hammarsten never testified, nor does the report indicate, that Mr. Ross actually has the beneficial alpha-thalassemia trait. Indeed, the medical evidence suggests he does not. The lab report states the findings would be consistent with an alpha-thalassemia trait if iron studies were normal (R. 517). Mr. Ross's iron studies were not normal, but were highly elevated (R. 598).

The ALJ also relied on Dr. Hammersten's testimony that the prognosis for sickle cell anemia is better than it used to be, because children are treated with penicillin. While this may be true, there is no evidence that Mr. Ross was treated with penicillin as a child. The ALJ also refers to the fact that several X-rays of Mr. Ross's feet and knees were for the most part normal. However, this is not significant. Although a person with sickle cell anemia may exhibit unusual physical features and bone changes that can be seen on an x-ray, a negative bone scan does not mean that there is not a serious condition.

Contrary to the ALJ's findings, we are firmly convinced that the objective medical record does document physical abnormalities that are reasonably capable of producing pain and fatigue consistent with Mr. Ross's testimony. Sickle cell anemia

is characterized by "[a] painful crisis, the most common crisis and the hallmark of the disease, . . . results from blood vessel obstruction by rigid, tangled sickle cells, which cause tissue anoxia and possible necrosis. This type of crisis is characterized by severe abdominal, thoracic, muscular, or bone pain." Professional Guide to Diseases 622 (6th ed. 1998). Consistently with this description, Mr. Ross has been hospitalized and gone to the emergency room many times with severe pain.[1]

Dr. Hammarsten testified that Mr. Ross suffers from the "SS" type of sickle cell anemia, which is the more severe form of the disease. Mr. Ross's hematocrit lab values also show that his condition is severe, and is worsening over time. Dr. Hammarsten testified that a hematocrit value below 30 indicated severe anemia. Mr. Ross's values have consistently gone down over time, and the last five readings have all been below 30.[2]

---

[1]In 1989, Mr. Ross was hospitalized with sickle cell crises four times. Between 1990 and 1993, he was hospitalized four times for sickle cell crises, and treated in the emergency room at least seventeen times. In 1994 he was hospitalized once. In 1995, he was hospitalized once and went to the emergency room once. In 1997, after his hearing, he was hospitalized twice, and went to the emergency room three times. On August 16, 1991, he was hospitalized with a sickle cell crisis, and the attending physician noted that he was "practically writhing with pain in his bed" (R. 237). On March 6, 1995, he went into the emergency room with a sickle cell crisis, and the attending physician noted, "He seems to be in obvious pain" (R. 328). On July 15, 1996, during an emergency room visit, the attending physician noted, "[he] seems to be in significant pain" (R. 383). On April 28, 1997, during another emergency room visit, his attending physician wrote that he was "in moderate pain, sort of writhing on the cart" (R. 583).

[2]The record shows that from September 1991 to October 5, 1995, only two readings were below 30. In the next ten months there were ten readings below 30, and two only slightly above 30. In the next ten months, up to May of 1997, all five readings were below 30, and two below 26.

Dr. Londer was Mr. Ross's treating physician since 1989. His medical opinion both supported Mr. Ross's testimony and was consistent with the objective medical record indicating that his condition was severe and worsening. In November of 1993, Dr. Londer wrote, "I think that clearly due to his sickle cell disease and the pains he is having in his joints, which I believe are real, that he should have a different type of job" (R. 366-67). In April of 1995, Dr. Londer noted that Mr. Ross needed "a few Percocet to cover him through this acute pain. I do believe him." (R. 362). In June of 1995, Dr. Londer wrote, "due to complications of [sickle cell anemia] Mr. Ross has a permanent disability. He is able to work only four hours per day" (R. 363). Also in June of 1995, Dr. Londer wrote, "at the present time I believe that he is totally disabled. He will be unable to work at least through September 1, 1995." (R. 360) In October of 1995, Dr. Londer wrote, "I think given his sickle cell and the amount of pain that he certainly does qualify for being disabled. Patient has pain and weakness secondary to sickle cell anemia" (R. 357). In an October 1997 letter, Dr. Londer noted that Mr. Ross had developed "increasing problems with pain, fatigue, frequent infections, and generalized malaise" typical of sickle cell anemia (R. 515).

The ALJ disregarded Dr. Londer's opinions as to the severity of Mr. Ross's impairments. The ALJ noted Dr. Londer's statement that he did not feel qualified to fill out a form regarding Mr. Ross's orthopedic limitations. From this, the ALJ inferred that Dr. Londer does not feel qualified to address his functional limitations. The ALJ also noted that there are inconsistencies in Dr. Londer's records.

These were insufficient reasons for disregarding the treating physician's opinions as to Mr. Ross's pain. Dr. Londer's failure to complete a form detailing orthopedic restrictions does not affect his ability to evaluate Mr. Ross's pain. Dr. Londer has been the treating physician for years, and has frequently seen him in pain both in and out of the hospital. Dr. Londer is perfectly capable of commenting on that pain, and suggesting, as he has done, that there is a medical reason for it. The inconsistencies in Dr. Londer's notes that the ALJ refers to reflect nothing more than that Mr. Ross's

condition varies, and at certain times is more severe than others. The ALJ points to a report on November 10, 1995, as an example of an inconsistency. In this report, Dr. Londer states that he believes Mr. Ross to be totally disabled due to his pain and weakness, and also that he feels well. This is not inconsistent. As Mr. Ross testified, some days are better than others, and on that day he could have felt well. However, Dr. Londer could still have reasonably thought that given his complete medical picture, which included an inability to do anything on some days, he was disabled. The ALJ similarly uses an August 24, 1995, report to show an inconsistency in Dr. Londer's opinions. This report notes that it is very difficult to evaluate claimant when it comes to pain. However, Dr. Londer also notes in the same report, "[W]ith his known sickle cell disease, he certainly has a set-up for having real pain" (R. 358). In contrast to the ALJ's findings, Dr. Londer's opinions are consistent with the medical record, and as such are entitled to substantial weight. See Kirby v. Sullivan, 923 F.2d 1323, 1328 (8th Cir. 1991).

Of course, Dr. Londer's opinion that Mr. Ross is disabled is not conclusive of that issue; disability is a legal, not a medical, determination. However, his statements provide a medical basis for Mr. Ross's pain and fatigue, and Dr. Londer repeatedly opines that the patient is telling the truth about his pain.

## B.

Mr. Ross also challenges the ALJ's finding that his daily activities are inconsistent with an inability to do any work. At the hearing, he testified that he naps during the day, and on more than half the days he will take more than one nap. He testified that the pain is at its worst two days out of the week, and on these days he will spend the whole day in bed. He rated the pain on these days as being a "ten" on a one-to-ten scale. On three or four days a week the pain was somewhat better, and he rated it as a "three or four" on the same scale. On these days he is able to do activities such

as vacuuming and mowing the lawn, although he does so slowly with frequent breaks.

The ALJ found that "on a daily basis claimant's pain is not such that it would preclude him from doing all work activity at any functional level." The ALJ refers to many activities that Mr. Ross is able to do (mow the lawn, helping to paint his uncle's cabin, driving, watching television, and sitting on a fishing boat), and uses these activities to show that on a day-to-day basis the plaintiff is not unable to perform work activity. However, the ability to perform these limited activities (with difficulty) on his good days is not inconsistent with his testimony that on his bad days, he cannot function at all. The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work. See Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998); see also Social Security Ruling 96-8p (residual functional capacity is an assessment of an individual's ability to perform sustained work-related physical activities in a work setting for eight hours a day, five days a week, or the equivalent work schedule).

To the extent that the ALJ did not believe Mr. Ross's testimony that on an average of two days a week he was incapacitated by pain, that finding is not supported by the record as a whole. As the preceding discussion indicated, there is an objective medical basis for his claims of severe pain. This pain is also substantiated by other witnesses. Ms. Lash, the claimant's girlfriend, testified that a couple of times a week he will spend most of the day in bed due to pain. Although the ALJ found this testimony inconsistent with Mr. Ross's testimony, it is not. Mr. Winston, his uncle, corroborated his testimony about the pain he is in and the naps that he takes.

III.

For these reasons, we hold that the ALJ erred in finding that the objective medical record did not document physical abnormalities reasonably capable of

producing the intractable pain and fatigue alleged by Mr. Ross. We also hold that the ALJ erred in finding that his daily activities are inconsistent with a complete inability to do any work. Neither of these findings is supported by substantial evidence on the record as a whole. The ALJ's residual-functional-capacity assessment that Mr. Ross could perform a limited range of sedentary work was based on these two flawed findings. Therefore it cannot be sustained. Since the vocational expert's testimony was based on this assessment, we also hold that his testimony was not substantial evidence that Mr. Ross could perform other substantial gainful activity.

In our view, the only residual-functional-capacity assessment that is supported by the record is that Mr. Ross cannot perform any substantial gainful activity, as he cannot maintain the attendance requirements of full time competitive employment. Mr. Ross is disabled. Accordingly, the judgment of the District Court is reversed, and the cause remanded with instructions to remand to the Commissioner for calculation and award of benefits.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.