**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-31403

CINDY T. MYERS,

Plaintiff-Appellant,

VERSUS

KENNETH S. APFEL, COMMISSIONER OF SOCIAL SECURITY

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

January 11, 2001

Before REYNALDO G. GARZA, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:

Cindy Myers filed an application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. After a hearing, an ALJ denied her claim, and the district court subsequently affirmed the decision. For the following reasons, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

## I. Facts and Procedure

1

Cindy Myers worked as a stagehand when she injured her back in January of 1986. Prior to that job, she had worked as a clerk and as a secretary. She was treated by Dr. Mark Hontas, an orthopedic professor, for back pain; he diagnosed back strain and recommended physical therapy. Myers's back pain increased after she was in a car accident in September of 1986. In 1988, Dr. Ray Haddad, chairman of orthopedic surgery at Tulane Medical Center Hospital and Clinic, treated Myers and diagnosed L5-S1 radiculopathy (a disease of the nerve roots in the back) and lytic lesion in the left hip. He recommended that she lose weight, and if the pain did not subside, he recommended surgery, which Myers refused. A February 1988 MRI revealed a ruptured disc, and Dr. Haddad again suggested surgery.

On September 28, 1988, Dr. Frank Kriz, an orthopedist, diagnosed low back strain and a bulging, but not ruptured, disc. He discharged Myers on December 6, 1988, giving her a five-percent disability rate and recommending that she see a psychiatrist, from whom she received antidepressants. Myers worked as a receptionist for three-month intervals in 1989 and 1990. On June 30, 1990, Myers, then thirty-three years old, was last insured for disability benefits.

In February of 1993, following another car accident, Myers saw Dr. William Johnston, and a second MRI showed degenerative disc disease. Dr. Johnston diagnosed chronic pain syndrome and referred Myers to a physical medicine specialist, who diagnosed sacroiliac

2

dysfunction (an unlevel pelvis from overstretched ligaments). In 1994, Myers was treated by Dr. Vanda Davidson, an orthopedist. Using the results from Drs. Hontas, Haddad, and Johnston, Dr. Davidson concluded Myers could lift ten pounds occasionally, lift one pound frequently, stand two hours out of the day for ten minutes at a time, and sit four hours out of the day for thirty minutes at a time. Her ability to reach and to push and pull would be affected.

Myers filed an application for disability benefits on May 26, 1994. After she was denied benefits, she was granted a hearing before an ALJ. Dr. Rufus Craig, an internist, was called as a medical expert (ME) by the ALJ. Without examining Myers and based only on a review of her medical records, Dr. Craig testified that Myers could not squat, stoop, or bend, but could sit six hours of eight, stand and walk two hours of eight, and occasionally lift ten pounds. Her "emotional overlay" would also limit her work. A vocational expert (VE) also testified. The VE said there were no jobs for claimants Myers's age with her education and experience who could sit for up to six hours a day, stand and walk for two hours, lift up to ten pounds, but who could not squat, stoop, bend, or kneel. However, he believed that a claimant who could not squat or crawl but who could stoop and bend in limited amounts and occasionally kneel could perform sedentary work. Responding to a hypothetical in which a person could sit for only thirty minutes at a time, the VE testified that jobs would be very limited, and when

asked about a person who could stand for only ten minutes at a time and who could sit for only thirty minutes at a time (i.e., Dr. Davidson's conclusion about Myers), he said there would be no jobs at all. Finally, Myers testified that she had lower back pain and numbness and that sitting was painful.

The ALJ found that Myers was not disabled and that although she was unable to return to her prior work on June 30, 1990 (the date when her insured status expired), she could make an adjustment to sedentary work. He concluded that Myers had a severe impairment, but that she could perform some sedentary work. The ALJ focused on the following evidence: Myers had mild scoliosis and no objective evidence of pain in 1986; x-rays looked normal, but then a lesion was discovered in 1987; there was possible evidence of a sequestrated disc in 1988, but Myers refused surgery;[1] she can cook, shower, do household chores, watch television, and shop; records from Dr. Kriz showed maximum improvement; and Dr. Johnston only noted a minimal bulge and no evidence of cord or root compression. Using the VE's testimony regarding a claimant who could not squat or crawl, could sometimes kneel, could occasionally crawl, and would need to stretch every half-hour, the ALJ concluded a significant number of jobs did exist which Myers could hold.

Myers filed suit in the district court, but the court

---

[1]Myers testified that she finally agreed to have surgery, but was unable to undergo the procedure because she and her husband moved out of state.

affirmed, finding that the VE and ME's testimony as well as Myers's own testimony were substantial evidence to support the decision of the ALJ.

## II. Standard of review

"We review the Secretary's decision only to determine whether it is supported by substantial evidence on the record as a whole and whether the Secretary applied the proper legal standard." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (in turn citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "In applying the substantial evidence standard, we scrutinize the record to determine whether such evidence is present. We may not reweigh the evidence, try the issues de novo, or substitute our judgment for that of the Secretary." Id. (citing Haywood v. Sullivan, 888 F.2d 1463, 1466 (5th Cir. 1989)).

## III. Discussion

To determine disability, the Commissioner uses a five-step analysis:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments

5

presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. Greenspan, 38 F.3d at 236 (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)). The Commissioner found Myers not disabled based on the fifth step because she could adjust to sedentary work. Myers argues on appeal that the ALJ failed to address the specific strength requirements of this work.

The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. B.B. ex. rel. A.L.B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981). The Fifth Circuit has frequently relied upon the rulings in evaluating ALJs' decisions. See Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000)(relying on SSR 96-2p); Scott v. Shalala, 30 F.3d 33, 34 (5th Cir. 1994)(relying on SSR 83-12); Spellman v. Shalala, 1 F.3d 357, 362 (5th Cir. 1993)(relying on SSR 83-20).

The following rulings are relevant to this dispute. First, SSR 96-8p provides that a residual functional capacity (RFC) "is an

assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." 1996 WL 374184, *1 (S.S.A. 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id. at *2. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Id. at *3. "However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work . . . ." Id. RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Id. at *5. "Each function must be considered separately." Id. "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." Id. at *7. The RFC assessment must include a resolution of any inconsistencies in the evidence. Id.

Second, SSR 96-9p also provides that

[i]nitially, the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities. . . . The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such

7

individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.

1996 WL 374185, *2 (S.S.A. 1996). SSR 96-9p also defines exertional capacity as the aforementioned seven strength demands and requires that the individual's capacity to do them on a regular continuing basis be stated.[2] Id. at *5.

The ALJ erred in failing to address the concerns of Social Security Rulings 96-8p and 96-9p in determining Myers's Residual Functional Capacity, specifically her ability to perform all of the strength demands of sedentary work. He found that she could sit, lift, and carry ten pounds; would need a sit/stand option; and would need to stretch every thirty minutes. The ALJ failed, however, to fully address standing, walking, and pushing/pulling. The ALJ also failed to set out whether Myers could perform these demands on a regular and continuing basis. Perhaps most importantly, the ALJ failed to resolve the inconsistencies in the evidence. He relied on the opinion of the ME, Dr. Craig, who did

---

[2]We have not found a case in which the Fifth Circuit has explicitly applied these rulings; however, other circuits have specifically addressed SSR 96-8p. In Bladow v. Apfel, 205 F.3d 356, 360 (8th Cir. 2000), the court remanded in light of SSR 96-8p's requirement of stating the individual's capacity to perform the strength demands on a "regular and continuing" basis because the ALJ had failed to follow the ruling. In Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000), the court again remanded relying on SSR 96-8p. ("The ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work."). The Ninth Circuit, in an unpublished opinion, also has remanded in light of this ruling. Lanclos v. Apfel, 2000 WL 1054893, *3 n.3 (9th Cir. 2000).

not examine or treat Myers, but based his conclusion that she met the requirements for sedentary work on an incomplete reading of the treating physicians' reports. However, the medical evidence as a whole indicates that Myers cannot meet the requirements. For example, Dr. Haddad diagnosed a ruptured disc, Dr. Johnston diagnosed degenerative disc disease, and Dr. Davidson put stricter restrictions on Myers's capacity.

Also, we do not find that substantial evidence supports the ALJ's decision. Myers presented evidence from six different doctors who all diagnosed some kind of back problem, whether it be degenerative disc disease or a ruptured disc. The ALJ appeared to rely solely on Dr. Craig, his own expert, an internist who based his opinion on an imperfect analysis of the reports of the treating physicians. Furthermore, the ALJ failed to consider the evidence carefully. For example, the ALJ cited the fact that Myers was told to lose weight to alleviate pain; however, her doctor also advised her that losing weight would not correct her disc problem, and he consistently recommended surgery.

Finally, "[w]e have long held that 'ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability.'" Greenspan, 38 F.3d at 237 (internal citations omitted). See also Loza, 219 F.3d at 395. These opinions are not conclusive, and the ALJ must decide the claimant's status. Greenspan, 38 F.3d at 237.

9

"Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." Id.; see also Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995) (rejecting an "isolated, conclusory statement" of a treating physician when considered in conjunction with other opinions, objective medical evidence, and claimant's own testimony).

Not only did the ALJ fail to take into consideration all of the evidence from the treating doctors, but he also failed to present good cause as to why he should reject it. An ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. Newton, 209 F.3d at 456. When presenting hypotheticals to the VE, the ALJ used the ME's testimony, based only on an incomplete restatement of the treating physicians' reports, as a basis for his conclusion that Myers could sit for six hours. The ALJ never presented good cause as to why he rejected Dr. Davidson's opinion that Myers could sit for only four hours, and he never professed to having weighed the evidence and credibility of the conflicting evidence. The ALJ failed to accord

10

considerable weight to the treating physicians' opinions, diagnoses, and medical evidence, without subjecting them to the above analysis or showing good cause for not giving them considerable weight. "[T]his is a case where the ALJ summarily rejected the opinions of [Myers's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." Newton, 209 F.3d at 458.

## IV. Conclusion

Accordingly, we remand for consideration in light of the foregoing.

REVERSED AND REMANDED.

11