# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 26, 2013

Lyle W. Cayce
Clerk

No. 13-30212
Summary Calendar

TAMMY LAFLEUR,

Plaintiff-Appellant

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL
SECURITY,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:11-CV-01620-TLM

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Tammy Lafleur filed a claim for Title XVI Supplemental Social Security disability benefits. Benefits were denied both in the administrative process at the Social Security Administration and after first-level judicial review by the United States District Court for the Western District of Louisiana.

We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30212

On February 7, 2011, an Administrative Law Judge ("ALJ") conducted a hearing on Lafleur's claim and then denied benefits. The Social Security Administration's Appeals Council affirmed. The Council's decision constitutes the Commissioner of the Social Security Administration's final decision. Lafleur appeals from the district court's affirmance of the Commissioner's decision.

Lafleur seeks reversal based on the argument that the ALJ's residual functional capacity ("RFC") finding was not supported by substantial evidence. Lafleur's argument is based on three claimed errors, and we will discuss each.

The parties agree that Lafleur has "degenerative disc disease" and "carpal tunnel syndrome" and was previously employed as a hotel front desk clerk. The question is whether Lafleur's conditions are sufficiently debilitating as to entitle her to an award of benefits.

Judicial review of a denial of Social Security benefits "is limited to whether the decision was supported by substantial evidence." *Fields v. Bowen*, 805 F.2d 1168, 1169 (5th Cir. 1986). Substantial evidence "is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In making this determination we "scrutinize the record in its entirety." *Fields*, 805 F.2d at 1169. Eligibility for benefits is evaluated under a five-step process:

> (1) Is the claimant currently working? (2) Can the impairment be classified as "non-severe"? (3) Does the impairment meet the duration requirement of 42 U.S.C. § 423(d)(1)(A) and is it listed, or medically equivalent to, an impairment in Appendix 1? (4) Can the claimant perform her past relevant work? and (5) Can the claimant perform any other gainful job?

*Id.* at 1170.

The ALJ denied benefits at step four, which concerns whether Lafleur could still perform past relevant work. The ALJ found that Lafleur could return

2

No. 13-30212

to her previous work as a hotel front desk clerk. Lafleur has the initial burden of demonstrating her inability to perform her prior work. *See id.* at 1169-70. Lafleur seeks to show she carried her evidentiary burden both by contending there were errors in the RFC finding and by emphasizing the importance of certain limitations that were found to exist.

One complained-of omission was that she should have been given an RFC limitation on looking down. Dr. George Smith testified at the administrative hearing that Lafleur "would have difficulty looking down on a persistent basis without the ability to change positions." Smith also testified Lafleur would "[p]robably do better . . . not having to change the position of her head and neck" in doing computer work.

There is contrary evidence in the record that supports the absence of this limitation. The state's medical consultant, Dr. Charles Lee, did not indicate any restrictions with respect to looking down. Also, Lafleur's treating physician, Dr. Vikram Parmar, found after two examinations that although Lafleur had "severe neck tenderness . . . . [s]he can touch her chin to her chest. She can hyperextend her neck . . . ." For these determinations, the most weight is given to treating physicians such as Dr. Parmar, who have the greatest degree of familiarity with a patient's medical conditions. 20 C.F.R. § 416.927(c)(2). Less weight is given to the testimony of physicians who perform consultative examinations, such as Dr. Lee, and still less weight to testimony based on a review of medical records, such as the testimony of Dr. Smith. *Id.*

The ALJ indicated she considered the opinion evidence "in accordance with the requirements of" this and companion Social Security regulations. The ALJ also indicated she considered other medical evidence "based on the requirements of" 20 C.F.R. § 416.929 and made a credibility finding that Lafleur's statements regarding "the intensity, persistence, and limiting effects" of her symptoms were not credible insofar as they went beyond the RFC finding.

3

No. 13-30212

ALJs are required to "take into consideration all of the evidence from the treating doctors." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). The ALJ did so, and the record contains credible medical evidence upon which the ALJ could have relied to omit a finding as to limitations on looking down.

Lafleur also complains that the RFC found a limitation for overhead lifting but no limitation on overhead reaching. The RFC stated that Lafleur could perform "light work . . . except no overhead lifting and standing and walking for thirty minutes."

After a review of medical records and consultative examination, Dr. Lee concluded that Lafleur did have a limitation in "[r]eaching in all directions (including overhead)." On the other hand, Dr. Parmar, Lafleur's treating physician, indicated in treatment notes after two separate examinations, that Lafleur "has 5/5 [normal] strength in the bilateral upper extremities" and "normal light touch" in those extremities. Earlier treatment notes state that Lafleur had "full range of motion and no restriction [in] movement."

Dr. Smith testified at the hearing that Lafleur "would have difficulty in working overhead," but did not expound upon the nature or extent of this difficulty. Among the items of evidence on which Dr. Smith relied was Dr. Parmar's notes indicating "a good range of motion of her cervical spine, really at that time was not having much [pain] in either extremity" and evidence that Lafleur was "improving with [physical therapy] treatments."

The ALJ opinion reveals that the opinions of Drs. Smith, Parmar, and Lee were considered, and noted "consideration of the entire case record" and "careful consideration of the evidence." We have already quoted the ALJ as stating she weighed opinion evidence in accordance with 20 C.F.R. § 416.927(c)(1)-(2), which would give more weight to the opinions of Dr. Parmar, a treating physician. Considering this testimony and other medical evidence in the record, there was

4

substantial evidence to support the omission of an overhead reaching limitation in Lafleur's RFC.  *See Myers,* 238 F.3d at 621.

Based on an RFC finding that omitted any looking-down or reaching-up limitation but included one for overhead lifting, the ALJ found that Lafleur could return to her past work as a hotel clerk.  Lafleur argues that this finding is not supported by substantial evidence.

At the hearing, the ALJ asked vocational expert Beverly Majors[1] to assume a hypothetical individual who "has no overhead lifting or downward looking [ability] and must alternate sit, stand and walk 30 minutes."  The expert was asked to state an opinion about that individual's ability to work as a hotel desk clerk.  This hypothetical "reasonably incorporated the disabilities recognized by the ALJ."  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical even gave Lafleur the benefit of the doubt, assuming a limitation for looking down although the ALJ did not find Lafleur was limited in this respect.  The question was not "too abstract to reflect [Lafleur]'s particular disabilities" and, prior to answering, Majors clarified an aspect of the question with the ALJ.  *See id.*  Further, Lafleur "had an opportunity to correct any defect in the hypothetical by mentioning additional limitations to the vocational expert."  *See id.*  Majors and Lafleur engaged in a short colloquy during which time Lafleur had the opportunity to speak.

Lafleur argues that because the RFC findings underlying the hypothetical were in error, the finding of ability to return to past work which relied on the vocational expert's answer to the hypothetical, was also in error, or not supported by substantial evidence.   Yet, Lafleur's premise – that the

---

[1] The ALJ's opinion refers to the vocational expert as "Lionel Bordelon," but the hearing transcript lists the expert as "Barilyn Mangers."  Lafleur's brief states that the vocational expert was named "Beverly Majors."  Regardless of the vocational expert's name, the content of the vocational expert's testimony is not contested.

No. 13-30212

hypothetical question was flawed – incorrectly assumes the ALJ was obligated to find Lafleur was limited in her ability to reach overhead. As we have discussed above, substantial evidence supports the omission of such a limitation. In addition, we have not been pointed to any record evidence that Lafleur's prior work involved overhead work of any kind.

The description of the hotel clerk job in section 238.367-038 of the Dictionary of Occupational Titles includes telephone, computer, and other clerical work, but does not indicate that any overhead work is a component of the job. The descriptions of Lafleur's past work in the record, including the descriptions provided by Lafleur at the hearing, similarly do not evidence an overhead work component to the job. Majors testified that Lafleur's position was largely "sedentary," with Lafleur "sitting six hours" and "[t]he heaviest weight lifted was two pounds." Lafleur's description of the job included standing up to answer the phone or greet customers, using a cash register, writing, retrieving files from other offices, and lifting paper into computers.

The ALJ's finding that Lafleur could return to her past work as a hotel clerk was supported by substantial evidence.

AFFIRMED.